The majority has granted the writ of mandamus in this case and has ordered the trial judge to disburse funds deposited in an interpleader action, even though there remains in the case the question of whether the trial judge was correct in dismissing the health insurance carrier's subrogation claim on the ground that the federal courts had exclusive jurisdictionof the subrogation claim because of the determination that the welfare benefit plan was one regulated by the Employees Retirement Income Security Act of 1974 ("ERISA").
The majority, although agreeing with me "that the trial court erred in dismissing the claim of Blue Cross," and in determining "that 29 U.S.C. § 1132(a)(3)(B)(ii) places in the federal district court exclusive jurisdiction to determine that claim," 571 So.2d at 1070, nevertheless orders the funds disbursed to the petitioners on the basis that "the judgment of dismissal was not challenged in this Court." 571 So.2d at 1070.
I think that the majority errs in ordering that the interpleaded funds be disbursed, based on these reasons:
 (1) "Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Jefferson County Comm'n v. Fraternal Order of Police, Lodge 64, 543 So.2d 198 (Ala. 1989).
 (2) The rights of various claimants to share in interpleaded funds should be determined in one action, and the refusal of a court to pay out such funds until the rights of the affected parties have been determined does not constitute a prejudgment attachment.
 (3) The federal district court does not have exclusive jurisdiction to determine the subrogation rights of an insurer just because those rights are contained in an employees' welfare benefit plan that is regulated under the provisions of ERISA.
 (4) The order of the trial court dismissing a subrogation claim by an insurer in an action of interpleader is not a final appealable order, unless it has been certified *Page 1071 
as provided in Rule 54(b), Ala.R.Civ.P.
Specifically presented are these two questions: (1) Does a state trial judge have jurisdiction to order a portion of the interpleaded funds retained until the subrogation rights can be settled, and (2) Does the federal district court haveexclusive jurisdiction of the health insurance carrier's claim because of specific provisions of ERISA?
The underlying interpleader proceeding was filed in the Circuit Court of Jefferson County by Government Employees Insurance Company (GEICO) to settle multiple claims against its insured based on injuries and damage arising out of an automobile accident.[1] GEICO joined as defendants to the interpleader action all parties who were damaged as a result of the accident, and also joined Blue Cross, the health insurance carrier that had paid hospital and medical bills for the Lewises. The petitioners here had previously made claims against GEICO's insured, those claims being based on the bodily injuries they suffered as a result of the automobile accident.[2]
Blue Cross's claim to the interpleaded funds, asserted in its answer to the interpleader complaint, and its answer to the Lewises's cross-claim, was based on its health benefits contract with the Lewises. Blue Cross claims that it was, and is, obligated to provide medical benefits to the Lewises and, in turn, was, and is, entitled to be subrogated to the Lewises' rights of action against those who caused the injuries for which the benefits were provided, which, in this case, would be the Lewises' rights against GEICO's insured. In addition to this contractual right of subrogation, Blue Cross's claim was based on its contractual right of first-money reimbursement from the Lewises, from any money recovered by the Lewises from those who caused the injury or condition for which Blue Cross provided medical benefits.
The terms of the Lewises' health benefits plan, under which Blue Cross claims it has subrogation/reimbursement rights, reads as follows:
 "If we pay or provide any benefits for you under this Contract, we are subrogated to all rights of recovery which you have in contract, tort, or otherwise against any person or organization for the amount of benefits we have paid or provided. That means that we may use your right to recover money from that other person or organization.
 "Separate from and in addition to our right of subrogation, if you or a member of your family recovers money from the other person or organization for any injury or condition for which benefits were provided by us, you agree to reimburse us from the recovered money the amount of benefits we have paid or provided. That means that you will pay to us the amount of money recovered by you through judgment or settlement from the third person or organization up to the amount of the benefits paid or provided by us. Our right to reimbursement comes first even if you are not paid for all of your claim for damages against the other person or organization or if the payment you receive is for, or is described as for, your damages (such as for personal injuries) other than health care expenses or if the Member recovering the money is a minor."
GEICO interpleaded $300,000, the policy limit of its liability for this accident, to the clerk of the court. The court divided the hearing on the interpleader action into two parts: (1) the allocation of funds between the parties who suffered bodily injuries in the accident and J. William Lewis, and (2) the division of the funds allocated to the Lewises in the first part of the hearing *Page 1072 
between the Lewises and Blue Cross.[3]
After hearing evidence in the first phase of the hearing and finding that the settlement proposed by GEICO, the Lewises, and the other bodily-injured parties was in the best interest of the minors and the other parties, the Court allocated the interpleaded funds as follows:
Lorraine Lewis $199,000.00 plus interest
Deirdre Lewis 20,000.00 plus interest
J. William Lewis 1,000.00 plus interest
Driver of 2d Car 60,000.00 plus interest
Passenger in 2d Car 20,000.00 plus interest ----------- $300,000.00 plus interest
Because none of the parties to the interpleader action disputed the amount of the funds allocated to the minors, who were the driver and passenger in the second car, the court made these allocations final and ordered the funds due them released. Because GEICO had paid its policy limits into the court, the court released GEICO's insured from any future liability to the parties named in the interpleader action for injuries resulting from the automobile accident.
In the second part of the hearing, the court considered the division between Blue Cross and the Lewises of the funds allocated to the Lewises. The Lewises subsequently filed a motion with the court in which they asked the court to dismiss Blue Cross's subrogation claim on the grounds that the court lacked jurisdiction over the claim under 29 U.S.C. § 1132
(a)(3) and 1132(e)(1) (Sections 502(a)(3) and 502(e)(1) of ERISA).[4]
The court initially did not make a definitive ruling on the question of whether it had jurisdiction to settle the claims of Blue Cross and the Lewises to the remaining interpleaded funds, but rejected the argument of the Lewises that Blue Cross had failed to file a claim for a portion of the funds, and found that Blue Cross had asserted a claim for the funds in its answers to the complaint in the interpleader action and to the Lewises' cross-claim.
The Lewises then asserted that if Blue Cross had made a claim for the funds, its claim would be a matter exclusively within the jurisdiction of the federal courts under § 502(a)(3) of ERISA.
After considering the arguments of Blue Cross and the Lewises on the motion to dismiss, the court entered the following order:
 "It appears to the Court that 29 U.S.C. § 1132
(a)(3)(B)(ii) does place exclusive jurisdiction within the federal courts to determine the claim filed by Blue Cross. Therefore, the Court grants the Lewises' 'Motion to Dismiss' but stays this portion of the order dismissing Blue Cross's claim contingent upon Blue Cross's filing an action in the Federal District Court within 30 days of the date of this 'Order.' In the event Blue Cross does not file its claim in the Federal District Court within 30 days of the date of this 'Order', the 'Motion to Dismiss' becomes final. If such action is filed by *Page 1073 
Blue Cross, the effect of the 'Motion to Dismiss' shall be stayed pending a determination of the claim of Blue Cross in the Federal District Court. Due to the Court's granting the 'Motion to Dismiss' it did not consider the 'Motion for Summary Judgment' filed by the Lewises and the 'Cross Motion for Summary Judgment' filed by Blue Cross.
"* * * *
 "The Clerk of the court is directed to pay ONE HUNDRED THIRTY EIGHT THOUSAND SIX HUNDRED TWENTY NINE AND 68/100 DOLLARS ($138,629.68) of the funds which have been interpled in this cause plus interest to Lorraine S. Lewis. The Clerk is further directed to withhold SIXTY THOUSAND THREE HUNDRED SEVENTY AND 32/100 DOLLARS ($60,370.32) of the funds which have been interpled plus interest which would otherwise be payable to Lorraine S. Lewis for a future determination by the courts of the claim filed by Blue Cross. The Clerk is directed to hold the TWENTY THOUSAND AND NO/100 DOLLARS ($20,000.00) plus interest which is Deirdre M. Lewis's share of the funds which have been interpled and the ONE THOUSAND AND NO/100 DOLLARS ($1,000.00) which is J. William Lewis's share of the funds which have been interpled pending a determination of the Blue Cross claim."
Both the Lewises and Blue Cross filed motions to amend the May 2, 1990, order, but the court denied both motions to amend and ordered that the funds allocated to the Lewises be distributed to or retained in accordance with its order of May 2, 1990.
Blue Cross then filed an action in the United States District Court for the Northern District of Alabama, in which the Lewises have filed a counterclaim.[5] Petitioners subsequently filed this petition for a writ of mandamus. Blue Cross filed an answer and what it described as a "counter-petition."[6]
 Argument of the Parties
In support of their petition, the Lewises argue that the state trial court's retention of a disputed portion of the interpleaded funds constitutes a prejudgment attachment in violation of Ala. Code 1975, § 6-6-30 et seq. They also continue to argue, as they did successfully to the trial judge, that the state court did not have jurisdiction over the interpleaded funds and over Blue Cross's claim to a portion of the interpleaded funds, because of the provisions of ERISA.
The issue of the federal court's exclusive jurisdiction is squarely presented by the *Page 1074 
petition for writ of mandamus, the petitioners arguing in their latest brief the following:
 "Blue Cross has done a creditable job of throwing sand in the air to try to create the impression of complexity of legal issues. As a practical matter the only issue presented is whether the jurisdictional language of ERISA means what it says, namely, that 'the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by . . . a fiduciary.' 28 U.S.C. § 1132(e)(1). Blue Cross says that Congress must have been kidding because Blue Cross has always in the past asserted its claims in state court proceedings. It is doubtless true that Blue Cross has ignored the restrictive provisions of ERISA and, like the eight hundred pound gorilla, has gotten its way in spite of the law. The reason has far more to do with might than with right. Both the jurisdictional provisions of ERISA and the policies underlying ERISA compel the conclusion that a fiduciary's claims must be brought in the federal district court. If Blue Cross dislikes being held to fiduciary standards in the federal court, it may be observed that there are those who are not pleased with the fiduciary perquisites conferred on Blue Cross by ERISA, including in particular relief from bad faith claims, punitive damages and jury trials.
 "Once the jurisdictional issue is disposed of, the legal principles applicable to the facts of this case are not subject to dispute. Indeed, the case is bereft of other legal questions. Thus there is no question that the conditions which justify a prejudgment attachment under the terms of Ala. Code, § 6-6-42, are not present in this case. There is also no question that the Blue Cross medical contract involved in this case is an employer-sponsored plan which constitutes a 'welfare plan' for ERISA purposes. There is also no question that Blue Cross is a 'fiduciary' with respect to its plan. Blue Cross does not dispute that the prejudgment attachment conditions have not been satisfied and in fact concedes the 'welfare plan' and 'fiduciary' issues in its brief to this Court and in its complaint filed in the federal court. Accordingly, the sole issue before this Court is whether 28 U.S.C. § 1132(e)(1) means what it says, and that issue is not complex."
 Petitioners not Entitled to Mandamus
Based upon all of these facts, and based on the fact that this court has held that petitioners are wrong on the "sole issue before this Court," have the petitioners shown that they have a clear legal right to have the trial court order all of the funds disbursed to the petitioners even though the issue of the exclusivity of the federal court's jurisdiction and the subrogation rights of Blue Cross have not yet been determined? Clearly not.
As stated earlier, this action was begun as an interpleader action, and until its dismissal from the action based upon a motion filed by petitioners, Blue Cross was a party to the proceeding and had actively pursued its claim there.
That interpleader actions are appropriate for the adjudication of conflicting claims to a fund, including claims of subrogation, is clear. Rule 22, A.R.Civ.P., is designed specifically for such situations involving conflicting and adverse claims. In International Underwriters/Brokers, Inc. v.Liao, 548 So.2d 163 (Ala. 1989), an insurer had interpleaded $25,000 in underinsured motorist insurance benefits due its insured, and named, along with others, its insured, Ms. Liao, International Underwriters, and Druid City Hospital as potential claimants. The decision in Liao is consistent with the holding in Lowe v. Nationwide Ins. Co., 521 So.2d 1309
(Ala. 1988), where this Court, quoting from Wall v. Hodges,465 So.2d 359 (Ala. 1984), said: " 'Separate trials of the same issues and facts are a waste of time and money.' "
 The Failure of Blue Cross to Appeal or to File A Counter-Petition
The majority, even though agreeing with me on what the petitioners call "the sole issue," the exclusiveness of the jurisdiction *Page 1075 
of the federal district court, says in support of the grant of mandamus that the jurisdictional issue is not presented because "the judgment of dismissal was not challenged in this Court." I recognize, of course, that the "counter-petition" for mandamus filed by Blue Cross could be considered insufficient to present the issue, but the burden is not on Blue Cross to show why the petitioners are not entitled to relief, it is upon petitioners to show why they are clearly entitled to the relief they seek. Petitioners, in my opinion, have not done that. They have not shown why they are entitled to the entire fundbefore Blue Cross's rights, if any, to the fund are determined.[7]
The petitioner's argument, apparently accepted by the majority, is that Blue Cross should have appealed the order of the trial judge dismissing its subrogation claim. That argument has no legal merit, because the order of dismissal affected only Blue Cross's claim, which was only one claim in the interpleader action; therefore, it was not a final order from which anappeal would lie, unless it had been certified as provided for in Rule 54(b), A.R.Civ.P. Even the petitioners recognize that there has been no final order in the interpleader action, because they are using mandamus, which obviously would not be available if there was a right of appeal on their part.
 The Retention of Interpleaded Funds is not a Prejudgment Attachment
Has there been a prejudgment attachment of funds as found by the majority? Clearly, there has not been. The funds were interpleaded funds, and no one disputes that Blue Cross has a right to have some court determine its rights under its contract. An attachment of funds involves the taking or seizure of funds belonging to a defendant and the depositing of the funds into the custody of the court in order to furnish security for a debt or for costs. An attachment is ancillary to a central action by which a plaintiff acquires a lien upon the property or effects of a defendant for satisfaction of a judgment that the plaintiff may obtain. See Jennings v. Wysong,276 Ala. 692, 166 So.2d 420 (1964). This Court has stated that the purpose of an attachment is to make the jurisdiction of the court in the main proceeding more effectual and to afford the plaintiff in the main action security for the satisfaction of the judgment he may obtain. Phillips v. Ash, 63 Ala. 414, 415
(1879); see also Allen Trucking Co. v. Adams, 56 Ala. App. 478,323 So.2d 367, cert. quashed, 295 Ala. 390, 323 So.2d 373
(1975).
As I view it, the court, in the interpleader action, did not seize or attach funds belonging to the Lewises in order to secure a possible judgment for Blue Cross. The very purpose of an interpleader action is to bring all claimants to a fund into court in one action and determine who is entitled to the fund or to a portion of it. That is exactly what happened here. In this case, the court accepted the deposit of the insurance funds claimed by the defendants into the court and discharged GEICO from further claims by the claimants. Because the defendants did not dispute the amount of funds allocable to the driver of the second vehicle and to the passenger in that vehicle, the court made final the proposed allocation of funds to those parties and ordered the clerk to release and distribute the funds to them. As between the Lewises and Blue Cross, however, the dispute over the remainder of the interpleaded funds has not yet been resolved.
Petitioners apparently do not argue that the underlying interpleader action was not appropriate in this case, their main argument being that Blue Cross cannot assert this claim in state court, but must have it adjudicated in federal court, and that in the meantime, they get the entire fund, no matter what happens to Blue Cross's claim. Clearly, interpleader is an appropriate action in cases involving the various claims of parties to a fund in cases such as this. See InternationalUnderwriters/Brokers, Inc. v. Liao, supra, which involved claims by a hospital, an insurer claiming subrogation rights, and others. *Page 1076 
Furthermore, the Rules of Civil Procedure specifically provide for the interpleader remedy in such cases. Rule 22, A.R.Civ.P., provides, in part:
 "Any party seeking interpleader . . . may deposit with the court the amount claimed [by several claimants] . . . and the court may thereupon order such party discharged from liability as to such claims, and the action continued as between the claimants of such money."
(Emphasis added.)
Based on the provisions of this Rule, I am of the opinion that the court had the authority to earmark a portion of the funds over which a dispute still raged concerning the insureds and the insurer, and to reserve a decision on that issue until there was an adjudication.[8]
Until an appropriate court resolves the competing claims of Blue Cross and the Lewises to the remainder of the interpleaded funds, it is proper for the court to retain these funds, in my opinion, especially in this case, where the trial court's dismissal of Blue Cross's claim on the grounds stated was erroneous, and the court dismissed the claim because of an incorrect interpretation of the applicable law. Clearly, the retention by the court of the disputed portion of the interpleaded funds cannot be construed as an attachment of funds due to the Lewises, because there has been no determination about the correct division of the funds between Blue Cross and the Lewises. Until such a determination is made, the Lewises are not entitled to the funds, and there can be no attachment of property that does not belong to them. In view of that, I am convinced that the trial court had the right to decide that the funds should remain with the court until the rights of the parties to the funds can be determined. To do otherwise defeats the purpose of an interpleader action, and in this case, the order disbursing the funds seems especially unjust in that this Court does not agree with the very argument made by the petitioners in support of their petition.
Consequently, I would hold that the court has not attached funds due to the Lewises in violation of either Ala. Code 1975, § 6-6-30 et seq., or the Due Process Clause of theFourteenth Amendment of the United States Constitution. On the contrary, this Court's order, which summarily disburses funds to one of several claimants to a fund before affording one of the parties its day in court, could itself have constitutional implications.
 The Federal Court Did Not Have Exclusive Jurisdiction
I now consider what the petitioners characterize as the "only issue presented" — "whether the jurisdictional language of ERISA means what is says, namely, that 'the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by . . . a fiduciary.' 28 U.S.C. § 1132(e)(1)."[9] The Lewises make the same argument they made in the trial court when they challenged the court's jurisdiction to hear Blue Cross's subrogation claim in a motion to dismiss in which the Lewises stated that §§ 502(a)(3) and 502(e)(1) of ERISA vested exclusive jurisdiction over Blue Cross's claim in the federal courts, and, therefore, deprived the court of jurisdiction to hear the claims.
Does ERISA grant the federal district courts exclusive jurisdiction of subrogation claims such as that presented here? I think not, and on this issue the majority agrees with me.
ERISA § 502(a)(3) provides in pertinent part, as follows:
 "A civil action may be brought . . . (3) by a . . . fiduciary, (A) to enjoin any act or practice which violates any provision of this title of the terms of the plan or (B) *Page 1077 
to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. . . ."
Blue Cross admits that ERISA § 502(e)(1)[10] provides that the United States district courts shall have exclusive jurisdiction of "civil actions under this title" brought by a participant, beneficiary, or fiduciary to obtain the relief available under § 502(a)(3), but Blue Cross argues that its claim to recover a portion of the interpleaded funds is not a "civil action" in itself, but is, instead, a claim made within the civil action brought by GEICO, that nothing in §§ 502(a)(3) and 502(e)(1) limited the court's jurisdiction over Blue Cross's claim in this action, and that the court was in error to conclude otherwise.
The question presented, of course, is whether Blue Cross's claim in the interpleader action is a "civil action" under the provisions of ERISA § 502(e)(1), — i.e.,29 U.S.C.A. § 1132(e)(1). The Lewises contend that it is. They argue:
 "The reason for the exclusive jurisdiction provisions was explained in Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504
[101 S.Ct. 1895, 68 L.Ed.2d 402] (1981). In Alessi, the U.S. Supreme Court explained that the federal courts were to evolve a 'federal common law of pension plans,' and then stated: 'Congress . . . meant to establish pension plan regulation as exclusively a federal concern.' 451 U.S. at 523
[101 S.Ct. at 1906] (emphasis added). The statutory underpinning of this pronouncement is found in the preambulatory provisions of ERISA:
 " 'It is hereby declared to be the policy of this chapter to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal Courts. [29 U.S.C. § 1001(b).]' "
Although the Lewises make a persuasive argument that the Blue Cross claim can be litigated only in federal district court, I have found cases involving similar facts in which the courts have held that the holder of a subrogation claim could litigate it in state court, even though the subrogation right was contained in a plan covered by ERISA.
The parties did not favor this Court with citations of cases involving ERISA on the question presented, but my independent research indicates that the courts that have considered the question have uniformly held that a subrogation claim is not a "civil action" within the meaning of ERISA, even though the subrogation claim is made by a party that has paid benefits pursuant to the provisions of an employee welfare benefit plan under ERISA.
One of those ERISA cases is Pfefferle v. Solomon,718 F. Supp. 1413 (E.D.Wis. 1989), which cited several other cases. In that case, the plaintiff, Karen Pfefferle, filed a malpractice suit in a Wisconsin circuit court against a chiropractor and his malpractice insurance carrier, in which she sought damages for injuries she allegedly sustained as a result of the chiropractor's negligent care, treatment, and supervision.
Pfefferle was an employee of defendant Abbott Laboratories, which provided a self-insured medical, hospital, and disability benefit plan for its employees. The plan *Page 1078 
was an employee welfare benefit plan under ERISA, 29 U.S.C. § 1001
et seq.
The plan contained a subrogation clause providing that if plan benefits were paid on account of sickness or injury caused by a third party, Abbott was subrogated to all rights of recovery against that third party to the extent necessary to reimburse the plan. According to the plan's terms, Abbott paid, on Pfefferle's behalf, for certain medical charges arising from or related to the chiropractor's supervision of Pfefferle.
Abbott, claiming that its subrogation claim was a "civil action" under the terms of ERISA, filed a petition to remove Pfefferle's suit to federal district court under the provisions of 28 U.S.C. § 1441. Concurrent with the removal of the action, Abbott filed an answer and a request for a judgment declaring its subrogation rights under the plan.
Pfefferle resisted removal of the cause to federal district court and claimed that Abbott's removal petition was frivolous because, she said, the case did not "arise under" federal law, according to the requirements of 28 U.S.C. § 1331. Pfefferle also argued that because Abbott had been named as a necessary party according to a Wisconsin statute, which required the plaintiff to join claims arising by subrogation, Abbott's claim was solely derivative, and not "affirmative." Further, Pfefferle contended that the federal Declaratory Judgment Act did not confer federal jurisdiction in the matter, because, she argued, the purpose of that Act was to effect remedies available, and not to expand federal jurisdiction.
Abbott, on the other hand, claimed that Pfefferle's suit alleged a claim falling within the scope of § 1132(a) of ERISA and was, therefore, removable to federal court. Abbott essentially argued that Congress had so pre-empted the area of employee welfare benefit plans that its subrogation claim, which was based upon provisions of a plan covered by ERISA, would give federal courts jurisdiction of the entire proceeding
in which the claim was pending. Abbott claimed thatMetropolitan Life Ins. Co. v. Taylor, 481 U.S. 58,107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), stated that, based upon the legislative history of ERISA's civil enforcement provisions, Congress intended suits falling within § 1132(a) to "arise under" federal law. Abbott also claimed that Pfefferle's malpractice suit fell within the scope of both §§ 1132(a)(1)(B) and 1132(a)(3) of ERISA. Abbott's argument that the Taylor case should apply was based on two contentions: (1) Although Pfefferle had not brought an action to recover benefits from Abbott pursuant to § 1132(a)(1)(B), as had the plaintiff inTaylor, the Supreme Court's ruling and its citations to the legislative record of ERISA left no doubt that the scope of the ruling extended to any action falling within the scope of § 1132, not just those under § 1132(a)(1)(B); and (2) that Pfefferle's action fell within the scope of both § 1132(a)(1)(B) and § 1132(a)(3).[11]
In Pfefferle, the court first addressed the question: "Is Pfefferle's malpractice action a civil action within the scope of § 1132(a)(1)(B) of ERISA?" The court answered that question as follows:
 "Abbott argues that Pfefferle's malpractice suit by its very terms calls into issue the propriety of Abbott's claim for subrogation under the plan. Section 13.15 of Abbott's self-insured plan is a subrogation clause, under which if plan benefits are paid to a third party, Abbott is subrogated to all rights of recovery against the third party necessary to reimburse the plan. The covered employee/dependent is required to execute all documents and instruments that Abbott considers necessary to secure its subrogation rights. Future benefits can be suspended until the requested documents and instruments are provided. Any action by the covered employee or dependent which prejudices Abbott's subrogation rights can void any benefits otherwise payable under the plan. See The *Page 1079 
Abbott Laboratories Medical Plan, Appendix A to Laufer Affidavit § 13.15, p. 45. Abbott's position is that by placing in issue Abbott's subrogation claim, a resolution of the underlying tort claim in Pfefferle's favor will necessarily require a determination of the propriety of Abbott's subrogation claim. Abbott states that '[t]he suit in essence thus calls for a declaration and determination of Abbott's subrogation claim.' Abbott's Brief in Opposition to Motion to Remand to State Court p. 7. Abbott contends that a determination of its subrogation claim will require the Court to construe and enforce the terms of the plan, clarify Pfefferle's rights to future benefits under the plan, and clarify whether Abbott is entitled to reimbursement and if so the ramifications if Pfefferle fails to reimburse the plan. As such, Abbott's position is that Pfefferle's malpractice suit is a civil action within § 1132(a)(1)(B).
 "This Court finds Abbott's arguments unpersuasive. That Pfefferle belongs to a plan and has brought a malpractice action which, if she is successful, will allow Abbott to be subrogated to all rights of recovery against Solomon to the extent necessary to reimburse the plan is not enough to bring Pfefferle's suit under § 1132(a)(1)(B). That section provides: 'A civil action may be brought — (1) by a participant or beneficiary (2) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' The plain language of the statute prevails over Abbott's argument: Pfefferle's action is not to recover benefits due to her under the plan, nor to enforce her rights under the plan, nor to clarify her rights to future benefits under the plan. See American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748
(1982) ('[T]he legislative purpose is expressed by the ordinary meaning of the words used. Thus, absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'). Moreover, this is a court of limited jurisdiction. It may not exercise jurisdiction without a clear legislative mandate. Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co., 700 F.2d 889, 892 (2d Cir.), cert. denied, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).
 "Courts appear to agree that the jurisdiction provision of ERISA does not provide for a civil action for employers. See Great Lakes Steel v. Deggendorf, 716 F.2d 1101, 1102 (6th Cir. 1983). Title 29 U.S.C. § 1132 provides:
 " 'Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary [of Labor] or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B).'
 "Abbott, as an employer, does not qualify as a participant, beneficiary, or fiduciary. See Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, at 21, 103 S.Ct. 2841, at 2852, 77 L.Ed.2d 420 (1983) ('The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes.'); id., 463 U.S. at 27, 103 S.Ct. at 2855 ('ERISA carefully enumerates the parties entitled to seek relief under § 502; [29 U.S.C. § 1132]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action . . . on the issues in this case. A suit for similar relief by some other party does not 'arise under' that provision.') Thus, Abbott does not have jurisdiction to sue. See In re Estate of Sheppard, 658 F. Supp. 729, 731-36 (C.D.Ill. 1987) (employer asserts lien on settlement proceeds through an alleged right of subrogation contained in the ERISA governed insurance policy; because employer could not maintain an *Page 1080 
action under ERISA in the district court to enforce its lien, it may not remove action from state court); see also Nationwide Mut. Ins. v. Teamsters Health, etc., 695 F. Supp. 181, 184
(E.D.Pa. 1988) (subrogated automobile insurer lacked standing under ERISA to sue fund in which its insured was a participant; ERISA only allows participants and beneficiaries to sue).
 "Other courts have considered and rejected arguments analogous to Abbott's that the subrogation analysis is a basis for jurisdiction under § 1132(a)(1)(B). See Allstate Ins. Co. v. The 65 Security Plan, 879 F.2d 90 (3d Cir. 1989) (rejects insurer's claim that its right to subrogation constitutes a suit under § 1132(a)(1)(B)); Northeast Dept. ILGWU v. Teamsters Local Un. No. 229, 764 F.2d 147, 154 n. 6 (3d Cir. 1985) (ERISA plan sued another claiming contribution and indemnity for benefits it had paid to a participant of both plans, court rejects subrogation theory, reasoning that 'Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf.')."
718 F. Supp. at 1416-18.
The court concluded that because the malpractice suit only concerned the plan in that the possibility existed for Abbott to recover any monies that Pfefferle might recover in that suit, a subrogated self-insured employer, joined by the necessity of a state statute, could not remove a state action to federal court. The court also held that Pfefferle's malpractice suit was not a "civil action" within the scope of § 1132(a)(3).
It is my opinion that Congress did not intend that federal courts have exclusive jurisdiction of every subrogation claim that grows out of an ERISA plan. I cannot accept, therefore, the Lewises' argument that Congress intended that federal courts were exclusively to develop a "federal common law of pension plans" dealing with the subrogation rights under ERISA plans because the regulation of subrogation rights under an ERISA plan is "exclusively a federal concern." Alessi v.Raybestos-Manhattan, Inc., 451 U.S. at 523, 101 S.Ct. at 1906.
Based on the foregoing, I am of the opinion that the trial court erred in dismissing Blue Cross's subrogation claim in the interpleader action on the ground that "29 U.S.C. § 1132
(a)(3)(B)(ii) [places] exclusive jurisdiction within the federal courts to determine the Blue Cross claim," the very issue the parties briefed in this Court.
I cannot determine whether the federal district court has jurisdiction of the independent action Blue Cross later filed in that court, in which Blue Cross alleged that it was a "fiduciary," as defined in 29 U.S.C. § 1002(21)(A), and was authorized, as such, to bring suit on behalf of the plan,[12] but *Page 1081 
this Court was advised in a brief filed by Blue Cross on August 6, 1990, after this case was submitted, that the parties attended a status and scheduling conference ordered by Judge William A. Acker, Jr., in the federal action,[13] and that Judge Acker entered the following order in that action:
 "Pursuant to the order entered on July 18, 1990, a status and scheduling conference was held in the above-entitled matter on this date. On July 27, 1990, plaintiff, Blue Cross and Blue Shield of Alabama, filed a motion for summary judgment, but has not yet answered defendants' counterclaim. Defendants have today filed a demand for jury trial. At the conference, the court was advised by counsel for plaintiff and defendants that there are now pending in the Supreme Court of Alabama cross-petitions for mandamus seeking interim review of the actions taken by Hon. Jack Carl in the interpleader case entitled Government Employees Insurance Co. v. Stiles, CV-89-7299, in the Circuit Court of Jefferson County, Alabama. Inter alia, there has been presented to the Supreme Court of Alabama the question of whether or not under the particular pleading circumstances in the Circuit Court of Jefferson County, Alabama, it had jurisdiction of the claim by Blue Cross and Blue Shield of Alabama to the interpled funds.
 "Because this court would prefer the Supreme Court of Alabama speak before this court speaks, it is ORDERED as follows:
 "1. This proceeding is STAYED pending decisions by the Supreme Court of Alabama on its pending petitions for writ of mandamus from the orders in CV-89-7299. This means that the parties are relieved from any obligation to file further pleadings or motions and shall not conduct any discovery in this cause until further orders of this court.
 "2. Plaintiff's motion for summary judgment will not be taken under submission [until] this stay is lifted.
 "3. The parties shall promptly inform this court of any and all rulings by the Supreme Court of Alabama in related matters.
"DONE this 30th day of July, 1990.
"s/William M. Acker, Jr.
"United States District Judge"
Blue Cross apparently filed the federal action only because the trial court had dismissed its state claim, and I address the correctness of the trial court's action only as it relates to the issues presented and argued in the parties' briefs on this petition for mandamus.[14]
 Why is Blue Cross Entitled to an Adjudication of Its Subrogation Rights before the Funds are Disbursed?
Even assuming that Blue Cross is a "fiduciary" under federal law, and, therefore, is authorized to sue in federal court, does the exclusive jurisdiction of ERISA preempt the state court of jurisdiction to consider Blue Cross's subrogation claim? I do not think so. I believe that Blue Cross is entitled to an adjudication on its contract claim, by some court, especially in this case, where its claim has been impermissibly dismissed from the pending interpleader action on a ground that this Court has *Page 1082 
now determined was not supported by legal authority.
In view of the fact that Blue Cross has been unable to get that adjudication in the interpleader action in state court, I would not think that the federal district court, applying equitable principles, would be powerless to effect a remedy to guarantee Blue Cross its rights under its contract, whatever those rights are, and to determine whether Blue Cross's subrogation rights are to be determined by state or by federal law. In short, while I do not believe that Congress intended to give federal district courts exclusive jurisdiction to establish a "federal common law of pension plans" governing subrogation rights contained in such plans, I am aware, as the Lewises argue in their brief, that the Supreme Court of the United States, in Alessi v. Raybestos-Manhattan, Inc.,451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981), said that "Congress . . . meant to establish pension plan regulation as exclusively a federal concern," I also know, of course, that the Supreme Court also said in Franchise Tax Board of Calif. v.Construction Laborers Vacation Trust for Southern California,463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the following:
 "The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties, . . . as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes. It did not go so far as to provide that any suit against such parties must also be brought in federal court when they themselves did not choose to sue."
463 U.S. at 21, 103 S.Ct. at 2852.
 "The phrasing of § 502(a) is instructive. Section 502(a) specifies which persons — participants, beneficiaries, fiduciaries, or the Secretary of Labor — may bring actions for particular kinds of relief. It neither creates nor expressly denies any cause of action in favor of state governments, to enforce tax levies or for any other purpose. It does not purport to reach every question relating to plans covered by ERISA. Furthermore, § 514(b)(2)(A) of ERISA, 29 U.S.C. § 1144(b)(2)(A), makes clear that Congress did not intend to pre-empt entirely every state cause of action relating to such plans. With important, but express limitations, it states that 'nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.' "
463 U.S. at 25, 103 S.Ct. at 28.
Based on the foregoing, I am of the opinion that the Lewises' petition for the writ mandamus should be denied.[15] Consequently, I must dissent.
STEAGALL, J., concurs.
[1] GEICO's insured caused the automobile accident, in which Lorraine and Deirdre Lewis and the driver of, and a passenger in, a second vehicle were injured.
[2] Lorraine Lewis, Deirdre Lewis, and the driver of, and the passenger in, the second car (both of whom were minors) made claims against GEICO's insured. The claim of J. William Lewis apparently was based on his relationship with Lorraine and Deirdre Lewis.
[3] The court concluded that Blue Cross's claim was limited to that portion of the interpleaded funds allocated to the Lewises.
[4] The grounds of the Lewises' motion were as follows:
 "1. The instant proceeding is an interpleader action to settle claims arising out of an automobile accident. The negligent party's insurance carrier, Government Employees Insurance Company ('GEICO'), has filed a Bill in the Nature of Bill of Interpleader (the 'Bill') and, in order to put Blue Cross on notice, GEICO named Blue Cross as a defendant in the Bill. Blue Cross has merely filed an answer to the Bill and has filed no pleading stating a claim on which relief can be granted. Accordingly, Blue Cross is due to be dismissed from this action for failure to state a claim.
 "2. Even if Blue Cross is deemed to have stated a claim, the said claim is due to be dismissed because only the federal district courts have jurisdiction to entertain such a claim. Under 29 U.S.C. § 1132(e)(1), the federal district courts are granted exclusive jurisdiction of all claims arising under or with respect to any 'welfare plan' (other than a claim by a beneficiary for benefits under the welfare plan). The subject Blue Cross contract is a 'welfare plan' and Blue Cross's claim is under the subrogation/reimbursement provision of the contract. Accordingly, this Court does not have jurisdiction to entertain Blue Cross's claim, and Blue Cross is due to be dismissed from this action."
[5] In that federal action, Blue Cross prayed:
"A. That this Court ascertain the amount of money to which Blue Cross is entitled from the Lewises under the subrogation/reimbursement provision of the Health Benefits plan.
"B. That this Court enter a judgment setting forth Blue Cross's right to subrogation/reimbursement in this case and the amount of Blue Cross's interest in any amounts recovered by the Lewises in connection with this accident, including the interpleaded amounts held by the Jefferson County Circuit Court, Equity Division, in case number CV-89-7299, and other amounts recovered by the Lewises which amounts are necessary to satisfy Blue Cross's interest.
"C. That this Court grant Blue Cross such further relief as it may deem fit and proper.
"D. That this Court determine the subrogation/reimbursement rights of Blue Cross under the terms and provisions of the Health Benefits plan.
"E. That this Court award Blue Cross reasonable attorney fees and costs."
[6] In the "counter-petition," Blue Cross stated that its "counter-petition is due to be granted for the reasons set forth in [its] memorandum brief." This "counter-petition" was not docketed, but both parties extensively briefed the question involving the exclusive jurisdiction of Blue Cross's subrogation claim by the federal district court. The majority does not consider the effect of both sides' arguing the matter to be that Blue Cross had filed a proper counter-petition. A decision on the jurisdictional question is necessary to a resolution of the petition filed by the Lewises, because the issue is so intertwined with the question of the appropriateness of the retention by the state trial judge of a portion of the interpleaded funds. I will examine the question of whether the federal courts have exclusive jurisdiction of Blue Cross's claim, because that issue is tied to the issue presented, and also because Rule 1, Ala.R.App.P., provides, in part, that the Appellate Rules "shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits."
[7] In this regard, the language of the Blue Cross policy is quite specific, and any court construing it, and cognizant of the right of parties to make contracts, would have to conclude that Blue Cross's claim is not frivolous.
[8] The court found "that it should not release the funds which have been interpled until a claimant has satisfied it that such claimant is entitled to the funds," and that "[a]t this pointneither claimant has satisfied the court that it is entitled tothe funds." (Emphasis added.)
[9] Page 2 of the petitioners' "Memorandum in Opposition to Motion for Oral Argument," filed August 21, 1990. On page 3 of that same brief the petitioners argue that "the sole issue before this court is whether 28 U.S.C. § 1132(e)(1) means what it says, and that issue is not complex."
[10] Section 1132(e)(1) of title 29 provides:
 "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of all civil actions under this subchapter brought by the Secretary or by a participant, beneficiary or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."
 The concurrent jurisdiction exception set out in subsection (a)(1)(B) is as follows:
"A civil action may be brought —
"(1) by a participant or beneficiary —
". . . .
 "(B) to recover benefits due to him under the terms of his plan to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan."
[11] In this case, the Lewises claimed, in their motion to dismiss Blue Cross from the interpleader proceeding, that the federal district court was granted exclusive jurisdiction of Blue Cross's subrogation claim because it was contained in a "welfare plan" covered by ERISA.
[12] Blue Cross, in the federal action, alleged that it was a "fiduciary" under the Health Benefits Plan, and as such, had "standing under § 502(a)(3), 29 U.S.C. § 1132(a)(3), of ERISA to bring [the] action on behalf of the Health Benefits Plan and its participants." The federal courts apparently are not in agreement on whether a benefit plan can bring an action under § 1132(a). Several courts have held that a benefit plan cannot bring suit pursuant to § 1132. Pressroom Unions-Printers LeagueIncome Security Fund v. Continental Assurance Co.,700 F.2d 889, 892-93 (2d Cir.), cert. denied, 464 U.S. 845,104 S.Ct. 148, 78 L.Ed.2d 138 (1983); International Union of Bricklayers Allied Craftsmen v. Menard Co. Masonry BuildingContractors, 619 F. Supp. 1457, 1459-63 (D.R.I. 1985);Sixty-Five Security Plan v. Blue Cross Blue Shield of GreaterNew York, 583 F. Supp. 380, 383-84, amended, 588 F. Supp. 119
(S.D.N.Y. 1984); Amalgamated Industrial Union Local 44-A Health Welfare Fund v. Webb, 562 F. Supp. 185, 188 (N.D.Ill. 1983).
However, two cases have held that benefit plans fall under the definition of a fiduciary. Saramar Aluminum Co. v. PensionPlan for Employees of Aluminum Industry, 782 F.2d 577, 581 (6th Cir. 1986), and American Federation of Unions, Local 102 Health Welfare Fund v. Equitable Life Assurance Society,647 F. Supp. 947, 949-50 (M.D.La. 1985), reversed in part by AmericanFederation of Unions, Local 102 Health Welfare Fund v.Equitable Life Assurance Society, 841 F.2d 658 (5th Cir. 1988), in which the Fifth Circuit Court of Appeals affirmed a holding by the District Court that under the facts of that case, Equitable was never more than an insurance carrier with respect to the fund in question.
Section 1002(21)(A) defines a "fiduciary" as follows:
"[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title."
[13] Blue Cross Blue Shield of Alabama v. Lewis, 753 F. Supp. 345.
[14] As I have pointed out in footnote 6, supra, the "counter-petition" was never docketed and this Court never ordered an answer and briefs on the question presented in that "counter-petition," but as I have also pointed out, the parties have extensively argued the federal jurisdictional question and I think it is inextricably intertwined with the question presented in the Lewises' petition.
[15] I have not addressed the "counter-petition" of Blue Cross, even though the parties have argued it and the federal district court refers to "cross-petitions for mandamus." I have addressed the jurisdictional issue, however, because even the Lewises consider it to the "sole issue" presented in this mandamus petition, and the parties recognize that a resolution of the jurisdictional issue is necessary to resolve the issues presented by the Lewises' petition.