International Underwriters/Brokers, Inc. ("International") appeals from an order of the Tuscaloosa County Circuit Court awarding it $7,500 in satisfaction of its $75,000 claim as subrogee.
The facts are not in dispute. In February 1987, Kang-Ling Liao was a passenger in an automobile involved in a multi-vehicle accident. That accident rendered her permanently *Page 164 
brain damaged — in a comatose state. From February 1987 to July 1987, Ms. Liao was a patient at DCH Regional Medical Center ("DCH") in Tuscaloosa, Alabama, where she incurred medical expenses in excess of $200,000. In July 1987, she was transported as a stretcher patient to a hospital in Taiwan, where she has required — and where she will require for the rest of her life — constant custodial and medical care. International, as medical insurer of Ms. Liao, paid $75,000 (the full payment required of it by the insurance contract with Ms. Liao) to DCH and various treating physicians.
Shortly after the accident, an action was filed on behalf of Ms. Liao[1] against Christopher Allen King, William Harold Albritton III, Eric Blaylock, James Harry Hammonds, and Harry's Bar for damages because of the injuries that she sustained and the expenses that she incurred as a result of the accident. International, by virtue of its having made the full payment required by the insurance contract, sought to be subrogated and was thereafter added as a party plaintiff to the action. DCH was also added as a party plaintiff because of its statutory hospital lien against Ms. Liao's estate.
A second action was filed wherein State Farm Fire Casualty Company interpleaded $25,000 in underinsured motorist insurance benefits due Ms. Liao, naming, along with others, Ms. Liao, International, and DCH as potential claimants. International filed an answer in that action, asserting its subrogation rights to the proceeds.
A pro tanto settlement was reached in the first action with defendants King and Blaylock, based on their combined insurance policy limits of $375,000. Before approval of the settlement, International acknowledged that under the common fund doctrine its subrogation interest was due to be reduced by its proportionate share of attorney's fees and expenses from $75,000 to $42,500.
The cases were consolidated by the trial court, and it adjudicated the individual interests of the parties with respect to the proceeds of the settlement and the underinsured motorist insurance benefits. The trial court's order reduced International's subrogation interest to $7,500, stating that this sum constituted a fair and equitable amount based on the facts of the case. The trial court further ordered the sum of $35,000, representing the difference in the amount awarded International and the amount claimed by it, to be held by the clerk of the court pending appeal. International appeals from that order.
Subrogation is an equitable doctrine intended to prevent the insured from recovering twice for a single injury and to reimburse the insurer for payments it made that should, in fairness, be borne by another. See generally 73 Am.Jur.2dSubrogation § 1 (1974); 3 Appleman, Insurance Law and Practice
§ 1675 (1967). When the insured recovers the full amount of his damages from a third-party tort-feasor, the insurer is entitled to reimbursement of payments made on the policy. However, courts have generally held that no right of subrogation exists until the insured has recovered an amount in excess of his or her loss. Continental Bank Trust Co. v. Alabama GeneralInsurance Co., 274 Ala. 622, 150 So.2d 688 (1963); see alsoLombardi v. Merchants Mutual Insurance Co., 429 A.2d 1290 (R.I. 1981); Hughes v. State Farm Mut. Auto. Ins. Co., 604 F.2d 573
(8th Cir. 1979); St. Paul Fire Marine Insurance Co. v. W.P.Rose Supply Co., 19 N.C. App. 302, 198 S.E.2d 482 (1973), cert. denied, 284 N.C. 254, 200 S.E.2d 655 (1973).
In 16 Couch on Insurance 2d (Rev. ed), § 61:64 (1983), we find the following:
 "[T]he insurer may in a given case have made the full payment required of it by its contract of insurance but this amount is not adequate to indemnify the insured in full. In such an instance, it has been held, in absence of waiver to the contrary, that no right of subrogation against the insured exists upon the *Page 165 part of the insurer where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer, after deducting costs and expenses. In other words, the insurer has no right as against the insured where the compensation received by the insured is less than his loss." (Emphasis added.)
Is the general rule that a subrogee is not entitled to recover, absent full recovery by the insured (i.e., unless the damages recovered plus the insurance proceeds exceed the insured's loss), in any way altered by the fact that the subrogation interest is based on a contract between the parties? We recognize two distinct types of subrogation — " '[l]egal subrogation', arising by operation of law where a surety having a legal liability pays a claim primarily owing by his principal, and '[c]onventional subrogation', grounded upon a lawful contract between the parties." Continental Bank Trust Co. v. Alabama General Insurance Co., supra,274 Ala. at 625, 150 So.2d at 690. International argues that, because its subrogation right is based upon an insurance contract, equitable principles should not apply and it is entitled to be subrogated regardless of whether its insured's total recovery is less than the insured's actual loss. We are of the opinion that the better reasoned rule, one followed in a number of jurisdictions, is that equitable principles apply to all instances of subrogation except when the contract expressly provides otherwise. Westendorf v. Stasson, 330 N.W.2d 699
(Minn. 1983); Wimberly v. American Cas. Co., 584 S.W.2d 200
(Tenn. 1979); Wescott v. Allstate Ins., 397 A.2d 156 (Me. 1979); Garrity v. Rural Mutual Insurance Co., 77 Wis.2d 537,253 N.W.2d 512 (1977); Lyon v. Hartford Accident Indem. Co.,25 Utah 2d 311, 480 P.2d 739 (1971), rev'd on other grounds, see Beck v. Farmers Ins. Exchange, 701 P.2d 795 (Utah 1985).
In Westendorf v. Stasson, supra, at 703, the Supreme Court of Minnesota stated:
 "Although subrogation can arise based on the equities of the situation alone, we are dealing here with 'conventional subrogation' which is the product of an agreement between the parties. See 16 Couch on Insurance 2d § 61.2 (1966). However, subrogation remains an offspring of equity. Thus, even when the right to subrogation arises by virtue of an agreement, the terms of the subrogation will nonetheless be governed by equitable principles, unless the agreement clearly and explicitly provides to the contrary. . . .
". . . .
 "Given its origins in equity and its restitutionary purpose of preventing unjust enrichment, the general rule is that subrogation, whether arising from equity or contract, will be denied prior to full recovery. That is, absent express contract terms to the contrary, subrogation will not be allowed where the insured's total recovery is less than the insured's actual loss.
See 16 Couch on Insurance 2d § 61:61 (1966); see also 3 Appleman, Insurance Law and Practice
§ 1675 (1967); Patterson, Essentials of Insurance Law § 33 (1957)." (Emphasis added.)
Similarly in Lyon v. Hartford Accident Indemnity Co., supra, 480 P.2d at 744-45, the court stated:
 "Since subrogation is an offspring of equity, equitable principles apply, even when the subrogation is based on contract, except as modified by specific provisions in the contract. In the absence of express terms to the contrary, the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the tort-feasor. If the one responsible has paid the full extent of the loss, the insured should not claim both sums, and the insurer may then assert its claim to subrogation." (Emphasis added.)[2]
We recognize that, while the doctrine of subrogation is of purely equitable origin *Page 166 
and nature, it may be modified by contract. In the instant case, the insurance contract at issue was not made part of the record. Therefore, we must assume that the contract did not contain specific provisions regarding International's subrogation rights that were contrary to established equitable principles. Consequently, equitable principles control the disposition of this case.
There is no question that Ms. Liao has not been fully compensated for her injuries. Therefore, we must hold that the trial court's decision to do equity and reduce International's subrogation interest was within its discretion.
International also argues that the trial court erred in its application of the common fund doctrine in that it allowed an attorney fee based on a $75,000 recovery to be paid to Ms. Liao's attorney, when in actuality the attorney's efforts recovered only $7,500 for International. We find no merit in this argument.
The general rule in Alabama is that attorney fees can be awarded only when "authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney created a fund out of which fees may be paid." Shelby County Commission v. Smith, 372 So.2d 1092
(Ala. 1979). This equitable type of attorney fee has been allowed in cases involving what this Court has categorized as a "common fund." In Kimbrough v. Dickinson, 251 Ala. 677, 684,39 So.2d 241 (1949), this Court discussed the theory behind "the common fund doctrine" as follows:
 "The rules rests upon the ground that where one litigant has borne the burden of expense of the litigation that has inured to the benefit of others as well as himself, those who have shared in the benefits should contribute to the expense."
See also, Maryland Casualty Company v. Tiffin, 537 So.2d 469
(Ala. 1988); Eagerton v. Williams, 433 So.2d 436, 451 (Ala. 1983).
International acknowledged that under the common fund doctrine its subrogation interest was due to be reduced by its proportionate share of attorney fees and expenses to $42,500. It is not this reduction that International contests, but the court's decision to further reduce International's interest to $7,500. A court of equity, however, has the power to condition any relief upon willingness to do equity. Robbins v. Bell,285 Ala. 124, 229 So.2d 511 (1969). Thus, the trial court's decision to reduce the subrogation amount was within its discretion, absent specific contract provisions to the contrary.
International also contends that the trial court's disproportionate treatment of International's subrogation interest in comparison to DCH's lien was inequitable and an abuse of discretion.
DCH's lien against Ms. Liao's estate was for $116,000. In satisfaction of that lien, DCH agreed to accept $28,000 out of the proceeds of the settlement with King and Blaylock but reserved the right to proceed against any future recovery. It is well settled that the subrogee not only "stands in the shoes" of the subrogor but also suffers all of the liabilities to which the subrogor would be subject. American Cyanamid Co.v. U.S. Fidelity Guar. Co., 459 So.2d 851 (Ala. 1984). International's subrogation interest, therefore, is secondary to that of the creditor of the insured, absent specific provisions in the contract providing otherwise. Thus, the trial court's treatment of International and DCH was not disproportionate and was well within its discretion.
For the foregoing reasons, we affirm.
87-1350 AFFIRMED.
87-1351 AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] The original complaint was amended to substitute Young Yu-Mei Liao, as curator of the estate of Kang-Ling Liao, for the plaintiff, Kang-Ling Liao.
[2] We understand the Utah Court to mean that the insurer is entitled to subrogation when the insured's recovery (from his insurer and from the tort-feasor) exceeds the amount of his loss, without regard to whether a full recovery has been gotten from the tort-feasor. *Page 167