PITTMAN, Judge.
This appeal presents a question regarding the proper application of the “common-fund” exception to the so-called “American rule,” which generally bars awards of attorney fees to prevailing parties, in the context of a dispute between an injured insured party and a subrogated insurance carrier over whether the carrier is responsible for a pro rata share of the insured’s attorney fees incurred in the process of obtaining a settlement payment against which the carrier has asserted a right of reimbursement. The common-fund exception as recognized in Alabama is derived from notions of equity and, in matters involving insurance subrogation, proceeds from the proposition that when an insurance carrier “is entitled to share, to the extent of its subrogation interest, in any recovery its insured achieves against a tortfeasor,” that carrier “should bear a proportionate share of the burden of achieving that recovery — including a pro rata share of the insured’s attorney fee.” Government Emps. Ins. Co. v. Capulli, 859 So.2d 1115, 1119 (Ala.Civ.App.2002).
In the case giving rise to this appeal, Tracy Mitchell (“the insured”), who was insured under an automobile-insurance policy issued by State Farm Mutual Automobile Insurance Company (“State Farm”), was injured, and her property was damaged, in a December 2008 automobile collision when the vehicle she was occupying was struck by a second automobile operated by Amy Kirk (“the driver”). The insured then retained counsel to represent her, who, after having agreed to a contingent fee of one-third of any recovery by the insured (plus expenses), interviewed the insured, investigated the scene of the collision, gathered the insured’s medical records, and reviewed those records with the insured.
The insured also made an insurance claim to State Farm, her own insurer, with respect to the collision; pursuant to the medical-payments, collision, and rental-car coverage provisions in its policy, State Farm paid certain sums on behalf of the insured, including $5,000 (the pertinent coverage limit) in medical payments and $7,992.90 in other payments. State Farm further ascertained that the driver was responsible for having caused the collision, and State Farm sent two letters to the driver’s liability insurer, Cotton States Mutual Insurance Company (“Cotton States”), in which State Farm asserted subrogation rights arising under the insured’s policy and demanded from Cotton States a total payment of $12,992.90. Cotton States acceded to State Farm’s demand as to the $7,992.90 sought with respect to payments made under coverages other than for medical payments, but Cotton States notified State Farm that “[t]he balance of the subrogation for medical payments coverages remains outstanding pending the settlem[e]nt of the *695 Bodily Injury claim with [the insured] and her attorney.” State Farm then notified the insured’s attorney by letter that it “intend[ed] to pursue a subrogation claim, without the need for you to represent State Farm, for the” $5,000 medical payment; State Farm further requested the attorney not to “take any action which may jeopardize [its] subrogation rights” and advised that if it “retained] an attorney to represent [its] interests,” it would advise the insured’s counsel of that retention.
The insured’s attorney, in September 2009, prepared and sent a demand-for-settlement letter to Cotton States seeking a payment of the limits of the driver’s insurance policy. The insured’s attorney’s demand-for-settlement letter acknowledged awareness of potential subrogation claims and hens and assured Cotton States that if a settlement was reached, the insured would satisfy all such demands. The insured’s attorney also sent a copy of that demand letter to State Farm and notified State Farm of the insured’s intent to make a claim under the underinsured-motorist coverage of the State Farm policy.
In October 2009, the insured initiated her multicount civil action against the driver, State Farm, and various fictitiously named defendants, stating tort claims stemming from the collision against the driver and the fictitiously named defendants, asserting claims for underinsured-motorists (“UIM”) benefits against State Farm, and, in a tort count against State Farm, alleging the existence of both a fraudulent, bad-faith refusal to pay an insurance claim and a conversion of funds stemming from State Farm’s rejection of the proposition that its subrogation interest was subject to a reduction under the common-fund doctrine. State Farm moved to dismiss the claims against it; as to the tort count, State Farm averred both that the common-fund doctrine was inapplicable and that the individual theories pleaded (i.e., conversion, bad-faith refusal, and fraud) did not state valid claims. The trial court denied that motion after a hearing.
The insured and Cotton States, on behalf of the driver, reached a tentative agreement with the insured regarding a settlement of all actual and potential claims against the driver in exchange for a payment of $35,000. The insured notified State Farm of the proposed settlement, and State Farm, through its counsel, gave the insured its consent to enter into the settlement, but it requested full reimbursement of its $5,000 payment for the insured’s medical expenses. Thereafter, the driver filed an unopposed motion seeking to pay the disputed $5,000 into court pursuant to Rule 22, Ala. R. Civ. P., governing interpleader, and to thereafter be dismissed as a party; the trial court granted that motion, leaving State Farm as the only named defendant.[1]
In June 2010, the insured filed a motion for a partial summary judgment, contending that, as a matter of law, State Farm’s right to recover its $5,000 medical-expense payment was subject to a pro rata reduction for attorney fees based upon the common-fund doctrine. State Farm filed a response in opposition to the insured’s motion, a cross-motion seeking a partial summary judgment in its favor on the tort count asserted against State Farm, and a motion to sever the insured’s UIM-benefits claims against State Farm from the action pursuant to Rule 21, Ala. R. Civ. P. After a hearing, the trial court denied the *696 insured’s motion and granted State Farm’s cross-motion on the basis of that court’s conclusion that the common-fund doctrine did not apply; in the view of that court, State Farm took sufficient affirmative action on its own behalf to avoid the application of the doctrine by virtue of its statement to counsel for the insured that State Farm would protect its own interests. The trial court further directed the entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.; it did not rule on the motion to sever.[2]
In their appellate briefs, the parties have largely reiterated their opposing positions regarding the common-fund doctrine that they advanced in the trial court. The insured posits that the common-fund doctrine applies in this case and that it mandates that State Farm’s right to recovery of its $5,000 payment be subject to a pro rata share of the attorney fees incurred in obtaining it; in the insured’s view, the trial court’s judgment must be reversed because the trial court did not properly apply the common-fund doctrine. State Farm defends the trial court’s judgment by rejecting the insured’s premise that the common-fund doctrine applies, arguing that (a) no “common fund” arose; (b) State Farm’s active participation in the settlement process renders the common-fund doctrine inapplicable; and (c) the provisions of the State Farm policy abrogate any application of the common-fund doctrine in the context of the parties’ dispute.
As we held in Capulli, supra, there are but two core requirements for applying the common-fund doctrine in the context of an insurer’s right of repayment stemming from its subrogation to the rights of its insured by virtue of paying a claim under the applicable policy of insurance: “(1) there must be a ‘fund’ from which to compensate the attorney; and (2) the attorney’s services must directly benefit the fund.” 859 So.2d at 1122. We disagree with State Farm that, as a matter of law, no “fund” came into being in this case in light of the undisputed facts that (a) the insured retained counsel to represent her interests in obtaining compensation from the driver for the insured’s injuries and losses stemming from the automobile collision at issue; (b) counsel for the insured diligently investigated the merits of the insured’s case against the driver, sent a demand letter to the driver’s liability-insurance carrier (Cotton States), and brought a civil action to recover damages on the insured’s behalf; and (c) counsel for the insured ultimately secured a $35,000 settlement from Cotton States (of which $5,000 was later paid into court to be subjected to the competing claims of the parties to this appeal). Although State Farm may be correct in noting that Cotton States had indicated to State Farm its acceptance of the proposition that the driver was at fault in the collision on January 9, 2009, a few days after the collision, there is no indication in the record that before the insured hired counsel on January 6, 2009, Cotton States had agreed to pay anything to State Farm or to the insured; further, the record affirmatively indicates *697 that Cotton States declined to meet State Farm’s direct subrogation demand against Cotton States to the extent that State Farm sought repayment for its $5,000 medical-benefits payment on behalf of the insured. We thus cannot agree with the proposition advanced by State Farm that the insured’s attorney did not exert efforts that gave rise to a fund that would ultimately have the capacity to benefit the interests of both the insured and State Farm (which asserted a claim to the fund immediately upon receiving notice that a settlement had been reached between the insured and Cotton States).
Having determined that a common fund did indeed arise, we next consider whether State Farm is nonetheless entitled to avoid the effect of the common-fund doctrine based upon either of the two rationales it has advanced. First, we note that State Farm correctly cites Ex parte State Farm Fire & Casualty Co., 764 So.2d 543 (Ala.2000), for the proposition that legal principles inhering in the law of subrogation, such as the general precept that an insurer that has paid claims of its insured has no subrogation rights against a tortfeasor who harmed the insured until the insured has been “made whole”, (ie., has been fully compensated), may properly be modified or abrogated by contrary provisions agreed upon by parties to a written contract. Although we agree with that proposition, and note that State Farm’s policy contains language expressly providing that State Farm’s subrogation rights as to payments made on behalf of any person apply “regardless of whether or not the person ... to or for whom [it makes] payment is fully compensated for damages sustained,” we do not agree with State Farm’s ultimate contention that its policy similarly abrogates the common-fund doctrine.
The policy language relied upon by State Farm in this context provides:
“If we are obligated under this policy to make payment to or for a person or organization who has a legal right to collect from another person or organization, then we will be subrogated to that right ■ to the extent of our payment. This applies regardless of whether or not the person or organization to or for whom we make payment is fully compensated for damages sustained in the accident.
[[Image here]]
“If we make payment under this policy and the person or organization to or for whom we make payment recovers or has recovered from another person or organization, then the person or organization to or for whom we make payment must:
“(1) hold in trust for us the proceeds of any recovery; and
“(2) reimburse us to the extent of our payment.
“This applies regardless of whether or not the person or organization to or for whom we make payment is fully compensated for damages sustained in the accident.”
(Emphasis omitted.) We note that, unlike the express negation of the “make-whole” doctrine, the State Farm policy does not expressly refer to potential attorney-fee claims in any way.
Although State Farm cites three opinions issued by various Alabama circuit-court judges tending to support its position that the policy provisions quoted herein negate the common-fund doctrine, “a circuit court case ... has no precedential authority.” Taylor v. State, [Ms. CR-05-0066, October 1, 2010] - So.3d -, - (Ala.Crim.App.2010). In fact, as this court has noted, the equitable right of an insured to withhold a pro rata attorney fee under *698 the common-fund doctrine “[i]n the case of an insured’s recovery of damages in which the insurer has an interest as subrogee after payment to the insured” may arise “aside from contract.” Blue Cross & Blue Shield of Alabama v. Freeman, 447 So.2d 757, 759 (Ala.Civ.App.1983) (citing State Farm Mut. Auto. Ins. Co. v. Clinton, 267 Or. 653, 518 P.2d 645 (1974)). No fewer than three states’ highest courts — those of Oregon (Clinton, 267 Or. at 662, 518 P.2d at 649), Maine (York Ins. Group of Maine v. Van Hall, 704 A.2d 366, 369 (Me.1997)), and Vermont (Guiel v. Allstate Ins. Co., 170 Vt. 464, 469-70, 756 A.2d 777, 781 (2000)),[3] have held that governing provisions of statutes or contracts providing for an insurer’s right of reimbursement to the extent of its payment do not unambiguously negate the application of the common-fund doctrine as to any recovery obtained by an insured that is to be held in trust for the benefit of that insurer. In the absence of language in the State Farm policy demonstrating a clear intent to negate the application of the common-fund doctrine to an insured’s recovery of damages from a third party, we are persuaded that the mere presence of subrogation and reimbursement clauses in the State Farm policy do not support the trial court’s summary judgment in favor of State Farm.
We last consider State Farm’s argument that, as a matter of law, the common-fund doctrine was negated by its “active participation.” As we noted in Capulli the “active-participation” defense to the applicability of the common-fund doctrine requires a showing that “the party sought to be charged with the attorney fee actively participated in producing the fund,” i.e., that the insurer ‘“actively participated in or its efforts substantially contributed to the creation or preservation of the subrogated fund.’ ” 859 So.2d at 1126 (quoting Johnny Parker, The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation, 31 Ind. L.Rev. 313, 335 (1998)) (emphasis added).
Here, as we have noted, the pertinent “fund” is the gross $35,000 recovery obtained by the insured, through her counsel, pursuant to the settlement reached with the driver’s insurer, Cotton States. As to that recovery, State Farm did nothing to aid the insured or its attorney; for all that appears in the record, State Farm did not assist the insured’s counsel in investigating the insured’s potential tort claim against the driver or in prosecuting the action against the driver once it was filed. Although State Farm notified counsel for the insured that it intended to pursue its own subrogation claim and indicated that counsel’s services on its behalf would not be necessary[4] before suit had been filed and Cotton States had agreed to settle the insured’s claims against the driver, State Farm was content to assert a claim for full reimbursement against the recovery obtained after the recovery became a reality rather than a contingency. State Farm’s insistence that its separate extrajudicial dealings with Cotton States to obtain reimbursement, and its declarations of its intent to seek full reimbursement, amount to *699 “active participation” simply does not comport with the necessity that the doctrine yield only to a showing that an insurer has helped create or preserve a subrogated fund; rather, it appears from the record in this case that State Farm, as occurred in Alston v. State Farm Mutual Automobile Insurance Co., 660 So.2d 1314, 1316 (Ala.Civ.App.1995), did nothing more of note than “rel[y] on [an insured’s] attorney to generate the benefits that it received from the common fund.”
Based upon the foregoing facts and authorities, we conclude that the trial court erred in determining that the common-fund doctrine did not apply to the $5,000 paid into court by the driver pursuant to the settlement reached between the driver and the insured. We reverse that judgment, and we remand the case for further proceedings.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. Although the driver was listed as an appel-lee in the insured’s notice of appeal, we have restyled the appeal to reflect the sole remaining real parties in interest.

. Although the trial court’s judgment refers to its judgment as being in favor of State Farm only as to "the issue of the common fund doctrine” (emphasis added), and although Rule 54(b) certifications may not properly be made as to only part of a claim, see generally Certain Underwriters at Lloyd's, London v. Southern Natural Gas Co., 939 So.2d 21, 27-29 (Ala.2006), the practical effect of the trial court’s ruling on the parties’ summary-judgment motions, coupled with its decision not to rule on the contract claims asserted against State Farm by the insured, was to preclude the insured from recovering on any claims stated in the tort count in her complaint. We thus conclude that the judgment from which the insured has timely appealed is final pursuant to Ala.Code 1975, § 12-21-2.

. In Capulli, we cited Guiel with approval as to several aspects of its discussion of the common-fund doctrine. Capulli, 859 So.2d at 1125, 1126.

. As the Supreme Court of Idaho noted in Wensman v. Fanners Ins. Co. of Idaho, 134 Idaho 148, 152, 997 P.2d 609, 613 (2000) (quoting Mahler v. Szucs, 135 Wash.2d 398, 427, 957 P.2d 632, 648 (1998)), State Farm’s rejection of the insured’s attorney as its own representative is not pertinent in this regard: " 'Consent to counsel by the benefited party is not required in common fund cases. If consent were required, there would be no common fund rule at all.’ ”