MAIN, Justice.
Following an automobile accident in which Tracy Mitchell was injured when the vehicle in which she was an occupant was struck by a vehicle being driven by Amy Kirk, State Farm Mutual Automobile Insurance Company (“State Farm”), Mitchell’s insurer, paid Mitchell’s medical expenses, among other coverage payments, and then sought, through subrogation, reimbursement from Kirk’s insurer, Cotton States Mutual Insurance Company (“Cotton States”). Mitchell filed a personal-injury action against Kirk, State Farm, and fictitiously named defendants, alleging as to State Farm, among other things, that State Farm’s right to recover from any damages awarded its payment of Mitchell’s medical expenses was subject to a reduction, pursuant to the common-fund doctrine, for attorney fees incurred by Mitchell in pursuing the personal-injury action.
The circuit court granted State Farm’s summary-judgment motion, holding that the common-fund doctrine did not obligate State Farm to pay a pro rata share of Mitchell’s attorney fees. Mitchell appealed the circuit court’s decision to the Court of Civil Appeals. The Court of Civil Appeals reversed the circuit court’s summary judgment, concluding that a common fund was created requiring State Farm to contribute to Mitchell’s attorney fees; that the common-fund doctrine had not been contractually abrogated; and that the common-fund doctrine was not negated by State Farm’s “active participation” in pursuing subrogation recovery. Mitchell v. State Farm Mut. Auto. Ins. Co., 118 So.3d 693 (Ala.Civ.App.2011). This Court granted certiorari review to determine, as a matter of first impression, the narrow question whether, under the common-fund doctrine, the subrogated insurance carrier is responsible for a pro rata share of the injured insured’s attorney fees incurred in the process of obtaining an award against which the carrier has asserted a right of reimbursement. We affirm the Court of Civil Appeals’ judgment.
I. Factual Background and Procedural History
The factual background and procedural history of this case are set forth in detail in the Court of Civil Appeals’ opinion:
“In the case giving rise to this appeal, Tracy Mitchell (‘the insured’), who was insured under an automobile-insurance *702 policy issued by State Farra Mutual Automobile Insurance Company (‘State Farm’), was injured, and her property was damaged, in a December 2008 automobile collision when the vehicle she was occupying was struck by a second automobile operated by Amy Kirk (‘the driver’). The insured then retained counsel to represent her, who, after having agreed to a contingent fee of one-third of any recovery by the insured (plus expenses), interviewed the insured, investigated the scene of the collision, gathered the insured’s medical records, and reviewed those records with the insured.
“The insured also made an insurance claim to State Farm, her own insurer, with respect to the collision; pursuant to the medical-payments, collision, and rental-car coverage provisions in its policy, State Farm paid certain sums on behalf of the insured, including $5,000 (the pertinent coverage limit) in medical payments and $7,992.90 in other payments. State Farm further ascertained that the driver was responsible for having caused the collision, and State Farm sent two letters to the driver’s liability insurer, Cotton States Mutual Insurance Company (‘Cotton States’), in which State Farm asserted subrogation rights arising under the insured’s policy and demanded from Cotton States a total payment of $12,992.90. Cotton States acceded to State Farm’s demand as to the $7,992.90 sought with respect to payments made under coverages other than for medical payments, but Cotton States notified State Farm that ‘[t]he balance of the subrogation for medical payments coverages remains outstanding pending the settlem[e]nt of the Bodily Injury claim with [the insured] and her attorney.’ State Farm then notified the insured’s attorney by letter that it ‘intend[ed] to pursue a subrogation claim, without the need for you to represent State Farm, for the’ $5,000 medical payment; State Farm further requested the attorney not to ‘take any action which may jeopardize [its] subrogation rights’ and advised that if it ‘retained] an attorney to represent [its] interests,’ it would advise the insured’s counsel of that retention.
“The insured’s attorney, in September 2009, prepared and sent a demand-for-settlement letter to Cotton States seeking a payment of the limits of the driver’s insurance policy. The insured’s attorney’s demand-for-settlement letter acknowledged awareness of potential subrogation claims and liens and assured Cotton States that if a settlement was reached, the insured would satisfy all such demands. The insured’s attorney also sent a copy of that demand letter to State Farm and notified State Farm of the insured’s intent to make a claim under the underinsured-motorist coverage of the State Farm policy.
“In October 2009, the insured initiated her multicount civil action against the driver, State Farm, and various fictitiously named defendants, stating tort claims stemming from the collision against the driver and the fictitiously named defendants, asserting claims for underinsured-motorists (‘UIM’) benefits against State Farm, and, in a tort count against State Farm, alleging the existence of both a fraudulent, bad-faith refusal to pay an insurance claim and a conversion of funds stemming from State Farm’s rejection of the proposition that its subrogation interest was subject to a reduction under the common-fund doctrine. State Farm moved to dismiss the claims against it; as to the tort count, State Farm averred both that the common-fund doctrine was inapplicable and that the individual theories pleaded *703 (i.e., conversion, bad-faith refusal, and fraud) did not state valid claims. The trial court denied that motion after a hearing.
“The insured and Cotton States, on behalf of the driver, reached a tentative agreement with the insured regarding a settlement of all actual and potential claims against the driver in exchange for a payment of $35,000. The insured notified State Farm of the proposed settlement, and State Farm, through its counsel, gave the insured its consent to enter into the settlement, but it requested full reimbursement of its $5,000 payment for the insured’s medical expenses. Thereafter, the driver filed an unopposed motion seeking to pay the disputed $5,000 into court pursuant to Rule 22, Ala. R. Civ. P., governing interpleader, and to thereafter be dismissed as a party; the trial court granted that motion, leaving State Farm as the only named defendant.
“In June 2010, the insured filed a motion for a partial summary judgment, contending that, as a matter of law, State Farm’s right to recover its $5,000 medical-expense payment was subject to a pro rata reduction for attorney fees based upon the common-fund doctrine, State Farm filed a response in opposition to the insured’s motion, a cross-motion seeking a partial summary judgment in its favor on the tort count asserted against State Farm, and a motion to sever the insured’s UIM-benefits claims against State Farm from the action pursuant to Rule 21, Ala. R. Civ. P. After a hearing, the trial court denied the insured’s motion and granted State Farm’s cross-motion on the basis of that court’s conclusion that the common-fund doctrine did not apply; in the view of that court, State Farm took sufficient affirmative action on its own behalf to avoid the application of the doctrine by virtue of its statement to counsel for the insured that State Farm would protect its own interests. The trial court further directed the entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.; it did not rule on the motion to sever.”
Mitchell, 118 So.3d at 695-96 (footnote omitted).
II. Standard of Review
“ ‘ “Alabama follows the ‘American rule,’ whereby attorney fees may be recovered if they are provided for by statute or by contract or if they are called for by special equity, such as in proceedings where the attorney’s efforts create a ‘common fund’ out of which fees may be paid.” ’ ” Jones v. Regions Bank, 25 So.3d 427, 441 (Ala.2009) (quoting City of Bessemer v. McClain, 957 So.2d 1061, 1078 (Ala.2006), quoting in turn Battle v. City of Birmingham, 656 So.2d 344, 347 (Ala.1995)). The Court of Civil Appeals aptly set out the development of the common-fund doctrine in insurance-subrogation cases in Alabama in Government Employees Insurance Co. v. Capulli, 859 So.2d 1115 (Ala.Civ.App.2002), as follows:
“The common-fund doctrine in insurance-subrogation cases is based on the equitable notion that, because an insurer is entitled to share, to the extent of its subrogation interest, in any recovery its insured achieves against a tortfeasor, the insurer should bear a proportionate share of the burden of achieving that recovery — including a pro rata share of the insured’s attorney fee. See generally Johnny Parker, The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation, 31 Ind. L.Rev. 313, 320-25 (1998); Annot., Right of Attorney for Holder of Property Insurance to Fee out of Insurer’s Share of Recov *704 ery from Tortfeasor, 2 A.L.R.3d 1441 (1965).
“The United States Supreme Court created the common-fund doctrine over 100 years ago in two decisions that did not involve insurance subrogation, see Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881), and Central R.R. & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). The landmark decision extending the doctrine to insurance-subrogation cases is United Semces Automobile Association v. Hills, 172 Neb. 128, 109 N.W.2d 174 (1961). See John P. Dawson, Lawyers and Involuntary Clients: Attorney Fees From Funds, 87 Harv. L.Rev. 1597, 1622-23 (1974). In 1983, this court, citing the Nebraska decision in Hills, applied the common-fund doctrine to an insurance-subrogation case for the first time in Alabama. See Blue Cross & Blue Shield of Alabama v. Freeman, 447 So.2d 757 (Ala.Civ.App.1983).”
859 So.2d at 1119. “Because the facts applicable to the issue presented are undisputed, our review of the application of the law to the facts of this case is de novo. Reynolds v. Colonial Bank, 874 So.2d 497 (Ala.2003).” Greene v. Town of Cedar Bluff, 965 So.2d 773, 779 (Ala.2007). Although this matter involves an award of attorney fees, which we generally review to determine whether the trial court exceeded its discretion, whether the common-fund doctrine applies in a case where the facts are undisputed presents a question of law, which we review de novo. See, e.g., Manci v. Ball, Koons & Watson, 995 So.2d 161, 170 (Ala.2008); Putman v. Womack, 607 So.2d 166, 166-67 (Ala.1992). Additionally, “[w]hen a trial court interprets an insurance policy as a matter of law, that interpretation is subject to a de novo review.” Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So.2d 1006, 1009 (Ala.2005).
III. Analysis
This case involves subrogation for medical expenses paid under an automobile-insurance contract by the insurer to the injured insured following an automobile accident and the issue whether the insurer is responsible for a pro rata share of the insured’s attorney fees in collecting those expenses from the tortfeasor. Sub-rogation is an equitable doctrine the purpose of which is to provide for a proper allocation of payment responsibility. See International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala.1989). Subro-gation seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it. Id. There are, in effect, two features to subrogation: (1) the right to reimbursement and (2) the mechanism for the enforcement of the right to reimbursement. Subrogation creates in the insurer, by contract or equity, a right to be reimbursed. The enforcement of the reimbursement interest is tempered by the principle that the insured and/or a tortfea-sor may not knowingly prejudice the right of the insurer to be reimbursed. See, e.g., Alabama Farm Bureau Mut. Cas. Ins. Co. v. Williams, 365 So.2d 315 (Ala.Civ.App.1978) (recognizing that a medical-expenses-payment subrogation clause did not constitute an impermissible assignment of a personal-injury claim but merely impressed a lien upon the proceeds of any recovery obtained by the insured from the tortfeasor); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Anderson, 48 Ala.App. 172, 263 So.2d 149 (1972) (same). Thus, if the insurer wishes to receive the benefit of the funds recovered by the insured’s attorney, the insurer must share in the attorney fees of recovering those funds from the tortfea-sor or the tortfeasor’s insured. See, e.g., Government Emps. Ins. Co. v. Capulli *705 supra, and Blue Cross & Blue Shield of Alabama v. Freeman, 447 So.2d 757 (Ala.Civ.App.1983).
State Farm contends that it has no liability for a pro rata share of the attorney fees on the $5,000 medical-expenses payment due it; that its “active participation” in recovering the medical-expenses payment negated any obligation it may have had to pay a pro rata share of the attorney fees; and that, regardless, even if the common-fund doctrine applies, the policy language abrogated its application here. Mitchell contends that she is entitled to deduct from the $5,000 due State Farm, representing State Farm’s payment to her for medical expenses, a pro rata share of the attorney fees she incurred in recovering that money.
A. Common-Fund Doctrine
The Court of Civil Appeals found that, under the facts of this case, a common fund existed “that would ultimately have the capacity to benefit the interests of both the insured and State Farm .... ” Mitchell, 118 So.3d at 697. In so concluding, the court reasoned that
“(a) the insured retained counsel to represent her interests in obtaining compensation from the driver for the insured’s injuries and losses stemming from the automobile collision at issue; (b) counsel for the insured diligently investigated the merits of the insured’s case against the driver, sent a demand letter to the driver’s liability-insurance carrier (Cotton States), and brought a civil action to recover damages on the insured’s behalf; and (c) counsel for the insured ultimately secured a $35,000 settlement from Cotton States (of which $5,000 was later paid into court to be subjected to the competing claims of the parties to this appeal).”
118 So.3d at 696. In addition, the Court of Civil Appeals explained that the record showed that “Cotton States declined to meet State Farm’s direct subrogation demand against Cotton States to the extent that State Farm sought repayment for its $5,000 medical-benefit payment on behalf of the insured.” 118 So.3d at 697.
We first note that, although the Court of Civil Appeals’ case of Freeman, supra, and its progeny, including Capulli, are not directly on point with the fact situation now before us, the equitable considerations expressed in those cases are equally applicable here. As the Court of Civil Appeals stated in Capulli, the common-fund doctrine was first applied in Alabama in Freeman. 859 So.2d at 1119. In Capulli, the Court of Civil Appeals discussed the development of the common-fund doctrine in insurance-subrogation cases such as Freeman, Alston v. State Farm Mutual Automobile Insurance Co., 660 So.2d 1314 (Ala.Civ.App.1995), and Lyons v. GEICO Insurance Co., 689 So.2d 182 (Ala.Civ.App.1997), and applied the common-fund doctrine as follows:
“In Freeman, the plaintiffs were injured in an automobile collision with State Farm’s insured. Blue Cross, the plaintiffs’ medical insurer, had paid the plaintiffs’ medical expenses of $1,550.20. The plaintiffs sued State Farm’s insured, the alleged tortfeasor, seeking compensation for, among other things, their medical expenses. Blue Cross notified the plaintiffs’ attorney that it was subrogated to the plaintiffs’ right to recover their medical expenses from the tortfeasor and that it expected to be paid from any recovery from the tortfea-sor. Blue Cross also notified State Farm of its subrogation claim and demanded payment. State Farm suggested that Blue Cross intervene in the plaintiffs’ lawsuit. The plaintiffs’ attorney wrote to Blue Cross, stating that he assumed Blue Cross was abandoning the *706 claim to be paid its subrogation interest from the plaintiffs’ recovery and was, instead, pursuing its subrogation interest directly with State Farm. Blue Cross intervened in the lawsuit, and the trial court entered a conditional summary judgment in its favor.
“ ‘The conditional judgment was not against the [tortfeasor], nor was it based upon a determination of liability of [the tortfeasor] nor upon the amount of damages plaintiffs were due to recover. The judgment was solely in favor of Blue Cross for the amount of $1,585.40 and against any funds recovered by plaintiffs from [the tortfeasor].’
“Freeman, 447 So.2d at 758.
“The plaintiffs and the tortfeasor settled on the day of trial. The plaintiffs moved to assess Blue Cross a pro rata share of their attorney fee, and the trial court granted the motion. Blue Cross appealed, arguing that its intervention and obtaining of a conditional judgment precluded the application of the common-fund doctrine, pursuant to the ‘active-participation’ exception or defense to the doctrine. This court affirmed, stating the following:
“ ‘As has been previously shown, Blue Cross appeared after pleadings and principal discovery had been completed. It did not join as a subrogee of a part of plaintiffs’ cause of action to aid plaintiffs in the prosecution of the suit. It appeared only to secure judgment against the insured for return of funds paid to its insured in the event the insureds were successful in their prosecution of the entire cause of action. It then retired from the field of battle, declining to assist or give aid at trial. The effect of the summary judgment against plaintiffs’ recovery was to force the insured to represent the interest of Blue Cross at trial or in settlement after having told Blue Cross they would not do so. Thereafter, recovery of the fund, including the amount due Blue Cross, was obtained solely through the effort of counsel for [plaintiffs] without the active or passive participation of Blue Cross.
“ ‘It is the opinion of this court that the mere appearance or intervention in the case by counsel for Blue Cross solely for the purpose of reducing its claim for subrogation to a judgment or lien against the recovery of the plaintiff-insureds, does not satisfy the requirement of active participation or assistance in the prosecution [of] the case. The facts in the case are clear that Blue Cross did nothing to assist in the recovery of the common fund from which it claimed $1,585.20. Rather than aid and assist plaintiffs, Blue Cross elected to collect its subro-gation claim from the avails of the litigation and settlement secured solely by the efforts and expense of counsel for plaintiffs. Equity and justice require it to pay its proportionate share of attorney fees and expenses incurred by plaintiff.’
“Freeman, 447 So.2d at 759-60.
“Since 1983, this court has applied the common-fund doctrine in two other insurance-subrogation cases. See Alston v. State Farm Mut. Auto. Ins. Co., 660 So.2d 1314 (Ala.Civ.App.1995), and Lyons v. GEICO Ins. Co., 689 So.2d 182 (Ala.Civ.App.1997). In all three cases— Freeman, Alston, and Lyons — we held that the insurer-subrogee was obligated to pay a pro rata share of its insured’s attorney fee because the efforts of the insured’s attorney had created a fund *707 from which the insurer directly benefited.”
859 So.2d at 1119-20.
In Capulli, the Court of Civil Appeals also discussed cases that were not insurance-subrogation cases, in which it had found that the common-fund doctrine did not apply:
“In three other decisions, which were not insurance-subrogation cases, we held that the common-fund doctrine did not apply and that no attorney fee was due from the entity sought to be charged. See Collins v. Taco Bell Corp., 689 So.2d 863 (Ala.Civ.App.1996); Day v. Ramada Inn South, 527 So.2d 130 (Ala.Civ.App.1987); Henley & Clarke v. Blue Cross-Blue Shield of Alabama, 434 So.2d 274 (Ala.Civ.App.1983).
“In each of the foregoing cases — Collins, Day, and Henley & Clarke — an attorney succeeded in having his client’s medical bills paid by a third-party obli-gor and then sought to charge a fee to an entity that had benefited from the payment or reimbursement of the medical expenses. In Collins, the obligor was the client’s employer because the medical bills were properly covered under the Workers’ Compensation Act; the beneficiary who was sought to be charged with the attorney fee was the health-care provider that had gone unpaid. In Day, the obligor was Aetna, the workers’ compensation carrier; the beneficiaries were Travelers, a private insurer that had mistakenly paid part of the client’s medical bills, and the healthcare providers whose claims were unpaid. In Henley & Clarke, the obligor was Medicare and the beneficiary was Blue Cross, a private insurer that had initially paid the client’s medical expenses.
“In all three cases, this court affirmed the trial court’s determination that the attorney was not entitled to a fee from the beneficiary under the common-fund doctrine. In all three cases, this court discussed various aspects of the common-fund doctrine and concluded that one or more elements of the test for applying the doctrine did not exist. Specifically, we determined that the beneficiaries were ‘incidental’ rather than ‘direct,’ a determination that was correct but incomplete and perhaps misleading. In Collins, Day, and Henley & Clarke, this court failed to explain that what removed the cases from the operation of the common-fund doctrine was the existence of a debtor-creditor relationship rather than a subrogor-subrogee relationship.”
859 So.2d at 1120-21. The Court of Civil Appeals in Capulli applied the common-fund exception to the American rule and held that a passenger who was injured in an automobile accident and who obtained a settlement from the other driver’s insurer was entitled to withhold one-third of her own insurer’s subrogation claim as a pro rata share of the attorney fee. 859 So.2d at 1127.
Since Capulli, the Court of Civil Appeals has decided several other cases involving the application of the common-fund doctrine in insurance-subrogation cases. For example, in Eiland v. Meherin, 854 So.2d 1134, 1139 (Ala.Civ.App.2002), the Court of Civil Appeals held that Eiland’s judgment against the tortfeasor created a common fund, even though the insured was the only beneficiary of the $50,000 judgment, and that the insurer was required to pay a pro rata share of the insured’s attorney fees under the common-fund doctrine. Subsequently, in Wolfe v. Alfa Mutual Insurance Co., 880 So.2d 1163, 1166 (Ala.Civ.App.2003), the Court of Civil Appeals held that an insurer who makes payments to its insured under the medical-payment provi *708 sion of its automobile policy was entitled to subrogation from a recovery from the tort-feasor’s insurer and was obligated under the common-fund doctrine to pay a pro rata share of the insured’s attorney fees.[1]
This Court must now determine, as a matter of first impression, whether the common-fund doctrine applies in an insurance-subrogation case such as the one before us in which the insurer has paid the insured’s medical expenses and the insured seeks payment from the insurer of a pro rata share of the insurer’s attorney fees. We adopt the requirements as set out by the Court of Civil of Appeals in Capulli, which involved subrogation for payment of medical expenses and conclude that a common fund arises in the medical-payments-coverage context where:
(1) there is a fund from which to compensate the attorney; and
(2) the services of the insured’s attorney actually benefited the fund.
See Capulli, 859 So.2d at 1122. Courts in other jurisdictions have also held in cases such as this, and in the absence of an agreement to the contrary, that the insured who is successful in recovering funds, which include money payable by the insured to an insurance company, is entitled to deduct attorney fees reasonably and necessarily incurred in procuring such a recovery.[2] See 21st Century Ins. Co. v. Superior Court, 47 Cal.4th 511, 213 P.3d 972, 98 Cal.Rptr.3d 516 (2009) (holding that, in the no-fault medical-payment-coverage context, the attorney-fee liability was to be shared pro rata between the insurer and the insured); Boll v. State Farm Mut. Auto. Ins. Co., 140 Idaho 334, 92 P.3d 1081 (2004) (stating that the automobile insurer that had paid expenses under medical-payments-coverage provision was required to pay its share of attorney fees for insureds’ recovery of its subrogat-ed interest from tortfeasor where the efforts of the insured or insured’s attorney resulted in an actual benefit to the insurer); Baier v. State Farm Ins. Co., 66 Ill.2d 119, 125, 361 N.E.2d 1100, 1102, 5 Ill.Dec. 572, Ill.Dec. 572, 574 (1977) (same; also, cases cited therein); State Farm Mut. Auto. Ins. Co. v. Clinton, 267 Or. 653, 518 P.2d 645 (1974) (same).
Applying the two-part test set out above, we must now determine whether a common fund was created in this case. As to the first part of the test, there was clearly a fund. The fund was the $35,000 settlement Mitchell received from Cotton States on behalf of the tortfeasor, Kirk. Mitchell’s attorney wrote letters, obtained medical records, filed a lawsuit, and negotiated the settlement of Mitchell’s personal-injury claim. The fund was a “common” fund because, as subrogor and subrogee, respectively, both Mitchell and State Farm had an interest in it. In particular, State Farm had an interest in the $5,000 payment for medical expenses it had made to Mitchell that Cotton States declined to pay until Mitchell brought a lawsuit against its insured, Kirk. As to the second part of the test — that the fund, and hence State Farm, has benefited from the services of Mitchell’s attorney — there is no question that State Farm, Mitchell’s insurer, benefited from Mitchell’s litigation efforts. Although we note that State Farm has cited decisions by other courts refusing to apply *709 the common-fund doctrine in medical-expense-payment cases,[3] we believe that the equitable considerations of the holdings of Freeman, Capulli, and their progeny are well reasoned; we therefore adopt the rule set out in Capulli for application in medical-payments-insurance-subrogation cases, in the absence of an agreement to the contrary between the insured and the insurance company, as set forth by the terms of the insurance policy. Accordingly, we conclude that application of the common-fund doctrine, under the facts of this case, was warranted and that State Farm was required to pay a pro rata share of Mitchell’s attorney fees based on the $5,000 medical-expenses payment.
B. Active Participation
Having determined that the common-fund doctrine applies in this case, we must next consider whether, as State Farm argues, it actively participated in producing the fund, thereby negating application of the doctrine. To avoid the application of the common-fund doctrine under this exception, an insurance company must actively assist its insured in the creation, discovery, increase, or preservation of the common fund. Freeman, 447 So.2d at 759-60.[4] The Court of Civil Appeals concluded that State Farm’s actions here did not amount to “active participation”:
“Here, as we have noted, the pertinent ‘fund’ is the gross $35,000 recovery obtained by the insured, through her counsel, pursuant to the settlement reached with the driver’s insurer, Cotton States. As to that recovery, State Farm did nothing to aid the insured or its attorney; for all that appears in the record, State Farm did not assist the insured’s counsel in investigating the insured’s potential tort claim against the driver or in prosecuting the action against the driver once it was filed. Although State Farm notified counsel for the insured that it intended to pursue its own subrogation claim and indicated that counsel’s services on its behalf would not be necessary before suit had been filed and Cotton States had agreed to settle the insured’s claims against the driver, State Farm was content to assert a claim for full reimbursement against the recovery obtained after the recovery *710 became a reality rather than a contingency. State Farm’s insistence that its separate extrajudicial dealings with Cotton States to obtain reimbursement, and its declarations of its intent to seek full reimbursement, amount to ‘active participation’ simply does not comport with the necessity that the doctrine yield only to a showing that an insurer has helped create or preserve a subrogated fund; rather, it appears from the record in this case that State Farm, as occurred in Alston v. State Farm Mutual Automobile Insurance Co., 660 So.2d 1314, 1316 (Ala.Civ.App.1995), did nothing more of note than ‘reify] on [an insured’s] attorney to generate the benefits that it received from the common fund.’ ”
Mitchell, 118 So.3d at 698-99 (footnote omitted).
We likewise do not consider the actions taken by State Farm to constitute “active participation.” State Farm’s communication with Cotton States and Mitchell’s attorney do not amount to “active participation.” Instead, the efforts of Mitchell’s attorney resulted in the $35,000 settlement and the reimbursement to State Farm of $5,000 for its medical-expenses payment to Mitchell. The Court of Civil Appeals and courts in other jurisdictions have held that an insurance company’s limited appearance to protect its subrogation interest and no more will not shield the insurance company from the application of the common-fund doctrine. See Alston v. State Farm Mut. Auto. Ins. Co., 660 So.2d 1314, 1316 (Ala.Civ.App.1995) (determining that, although the insurer participated in pretrial discovery, it did not “participate in the cost of litigation until the jury returned its verdict”); Freeman, 447 So.2d at 759 (concluding that because the “mere appearance as an intervenor by an insurer for the purpose of securing a conditional judgment for its subrogation claim against the amount recovered by its insured does not aid or assist in the recovery of the common fund,” such an appearance did not defeat a common-fund claim under the active-participation exception).[5]
*711 To the extent that State Farm argues that it did not consent to representation by the insured’s attorney, we, like the Court of Civil Appeals and courts in other jurisdictions, find that argument to be without merit. See, e.g., Mitchell, 118 So.3d at 710; Mahler v. Szucs, 135 Wash.2d 398, 427, 957 P.2d 632, 648 (1998) (providing that consent to counsel by the benefited party is not required in common-fund cases because the proper focus is on the benefited party). Therefore, we conclude that, under the facts of this case, State Farm did not actively participate in the litigation to the extent necessary to justify negation of the common-fund doctrine.
C. Abrogation by Policy Language
Lastly, we must consider whether the language of State Farm’s automobile-insurance policy entitled it to avoid the effect of the common-fund doctrine. The Court of Civil Appeals determined that the policy language relied upon by State Farm did not abrogate the common-fund doctrine because “the State Farm policy does not expressly refer to potential attorney-fee claims in any way.” Mitchell, 118 So.3d at 697. We agree and conclude that the language in State Farm’s policy does not expressly abrogate the common-fund doctrine.
The policy language relied on by State Farm reads as follows:
“GENERAL TERMS

“12. Our Right to Recover Our Payments

[[Image here]]

“a. Subrogation

“If we are obligated under this policy to make payment to or for a person or organization who has a legal right to collect from another person or organization, then we will be subrogated to that right to the extent of our payment. This applies regardless of whether or not the person or organization to or for whom we make payment is fully compensated for damages sustained in the accident.
“The person or organization to or for whom we make payment must help us recover our payments by:
“(1) doing nothing to impair that legal right
“(2) executing any documents we may need to assert that legal right; and “(3) taking legal action through our representatives when we ask.

“b. Reimbursement

“If we make payment under this policy and the person or organization to or for whom we make payment recovers or has recovered from another person or organization, then the person or organization to or for whom we make payment must:
“(1) hold in trust for us the proceeds of any recovery; and
“(2) reimburse us to the extent of our payment.
“This applies regardless of whether or not the person or organization to or for whom we make payment is fully compensated for damages sustained in the accident.
[[Image here]]
“INSURED’S DUTIES
[[Image here]]

“3. Insured’s Duty to Cooperate With Us

[[Image here]]
*712 “b. The insured must not, except at his or her own costs, voluntarily:
“(1) make any payment to others; or
“(2) assume any obligation to others unless authorized by the terms of this policy.”
(Emphasis added.)
In particular, State Farm argues that the language “to the extent of our payment” provides it with the right of subro-gation and reimbursement and precludes Mitchell from contracting to pay attorney fees out of its medical-payments-coverage recovery without its express consent. In Liao, this Court stated that “equitable principles apply to all instances of subro-gation except when the contract expressly provides otherwise.” 548 So.2d at 165 (emphasis added). See also Ex parte State Farm Fire & Cas. Co., 764 So.2d 543 (Ala.2000) (reaffirming the rule of Liao). State Farm contends that the above-quoted language of the insurance policy expressly modifies the established equitable principles of subrogation such that the common-fund doctrine is not applicable to Mitchell’s case.[6] We, like the Court of Civil Appeals, disagree. Because the policy language cited by State Farm does not expressly abrogate the common-fund doctrine under that facts of this case, we hold that State Farm must pay a pro rata share of Mitchell’s attorney fees.
IV. Conclusion
We conclude that a common fund was created in the case; that the common-fund doctrine applies in medical-expenses-payment-insurance-subrogation matters such as this; that State Farm did not actively participate in the case so as to negate the common fund; and that the policy language in this case did not expressly abrogate the common-fund doctrine. Therefore, we affirm the judgment of the Court of Civil Appeals.
AFFIRMED.
MALONE, C.J., and WOODALL, BOLIN, PARKER, MURDOCK, SHAW, and WISE, JJ., concur.

. The made-whole doctrine addressed in Wolfe is not an issue in the case before this Court.

. See also Wajnberg v. Wunglueck, 963 N.E.2d 1077, 357 Ill.Dec. 679 (Ill.App.Ct.2011) (setting out, in the medical-payments context, what must be shown to be entitled to attorney fees under the common-fund doctrine, applying the doctrine, and holding that an automobile insurer was required to pay a portion of the attorney fees).

. See O’Donnell v. Johnson, 209 P.3d 128, 135 (Alaska 2009) (holding that the common-fund doctrine did not apply when the "insurer [chose] not to rely on the services of plaintiff's counsel and provide[d] notice”); Osborne v. State Farm Mut. Auto. Ins. Co., 923 P.2d 304, 305-06 (Colo.Ct.App.1996) (refusing to apply common-fund doctrine because insured did not give insurer opportunity to participate in settlement negotiations; insurer expressed intent to pursue its claim independently in arbitration proceedings; and insurer expressed no intention to share in funds generated by insured's suit); Cockman v. State Farm Auto. Ins. Co., 313 Ark. 340, 343, 854 S.W.2d 343, 345 (1993) (stating that the common-fund doctrine did not apply because an arbitration agreement required the insurers to forgo litigation, evidence clearly demonstrated that the insurer had not refused to pursue its independent subrogation claim, and the insured warranted in subrogation receipt that she would make no settlement or release regarding sub-rogated rights without the insurer’s written consent); Courtney v. Birdsong, 246 Ark. 162, 169, 437 S.W.2d 238, 242 (1969) (finding no equitable reason the insurer should pay an attorney fee because the insurer "did not agree to pay any part of [the insured's] attorney fee”); and Travelers Ins. Co. v. Williams, 541 S.W.2d 587, 590-91 (Tenn.1976) (refusing to apply the common-fund doctrine because there was no relation between the attorney and the insurer, and, thus, the attorney simply acted as a volunteer).

.See also Texas Farmers Ins. Co. v. Seals, 948 S.W.2d 532, 533 (Tex.Ct.App.1997) (providing that an insurer that does not assist in the insured's collection of damages from a third party must pay its share of the costs and expenses incurred in obtaining the recovery from the third party, including attorney fees).

. See Draper v. Aceto, 26 Cal.4th 1086, 33 P.3d 479, 484, 113 Cal.Rptr.2d 61 (2001) (noting that the mere retention of an attorney is insufficient to defeat a recovery under the common-fund doctrine because the critical question is whether the party contributed toward securing or preserving the fund); Amica Mut. Ins. Co. v. Maloney, 120 N.M. 523, 529, 903 P.2d 834, 840 (1995) (providing that the automobile insurers’ actions in sending standard letters to the tortfeasors’ insurer stating that they had subrogation interest in their insureds’ recoveries against the tortfeasors and asking for repayment after settlement did not amount to "active participation” in insureds' settlements with tortfeasors’ insurer, for purposes of "active participation” exception to common-fund doctrine); and Castellari v. Partners Health Plan of Colo., Inc., 860 P.2d 593, 595 (Colo.Ct.App.1993) (holding that the insurer that had a subrogated claim for medical benefits was required to pay a proportionate share of attorney fees and costs incurred in the litigation producing a recovery from which the claim was paid where its involvement in litigation was "limited to filing a motion to intervene and obtaining a stipulation of the amount of its claim for subrogation”); see also Principal Mut. Life Ins. Co. v. Baron, 964 F.Supp. 1221, 1224 (N.D.Ill.1997) (applying Illinois law and finding that the insured could charge attorney fees against a fund recovered from which the subrogated insurer benefited because, even though the insurer hired attorneys, they "were concerned merely with protecting their client's right to reimbursement, not creating the fund”). Cf. Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman v. State Farm Ins. Co., 100 Ill.App.3d 93, 97, 426 N.E.2d 315, 318, 55 Ill.Dec. 340, 343 (1981) (finding active participation when the insurance carrier rejected the plaintiff’s representation offer and negotiated with the third-party's carrier).
Likewise, an insurance company’s insistence that it intends to protect its subrogation interest, without more, will not defeat the application of the common-fund doctrine. See Forsyth v. Southern Bell Tel. & Tel. Co., 162 So.2d 916, 920-21 (Fla.Dist.Ct.App. *711 1964); Taylor v. American Family Ins. Group, 311 Ill.App.3d 1034, 1039, 725 N.E.2d 816, 820, 244 Ill.Dec. 343, 347 (2000); and Lancer Corp. v. Murillo, 909 S.W.2d 122, 128-29 (Tex.Ct.App.1995).

. We simply note that other jurisdictions have interpreted similar language and held that such language did not unambiguously abrogate the common-fund doctrine. See, e.g., York Ins. Group of Maine v. Van Hall, 704 A.2d 366, 369 (Me.1997) (holding, in a medical-expenses-payment-insurance-subrogation case, that the "common fund doctrine is available in Maine in cases where an insured incurs attorney fees and expenses in recovering a judgment or settlement that benefits a subrogated insurer” and explaining that the phrase "to the extent of our payment” contained in insurance contract "does not clearly address the question whether the insured is permitted to retain a prorated portion of the cost of recovery from its obligation under the contract's subrogation clause”); State Farm Mut. Auto. Ins. Co. v. Clinton, 267 Or. 653, 661-62, 518 P.2d 645, 649 (1974) (finding, in a medical-expenses-payment-insurance-subro-gation matter, that the common-fund doctrine was not contractually abrogated where State Farm sought to avoid paying an attorney fee by arguing that language "to the extent of our payment" negated the application of the common-fund doctrine).